UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Thomas Phillip Sayers,<br><br>Defendant. | Crim. No. 12-235 (JNE/LIB)<br><br>**REPORT AND RECOMMENDATION** |

This matter came before the undersigned United States Magistrate Judge upon Defendant's motion to dismiss the indictment. The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on December 21, 2012, regarding the motion to dismiss the indictment and both parties' discovery motions in this case.[1] The parties each called one witness at the hearing and requested to make their arguments in support of and in opposition to the motion to the Court in writing. Having considered the record and both of the parties' written submissions, for the reasons outlined below, the Court recommends that Defendant's motion to dismiss the indictment be denied.

I.  **BACKGROUND**

On October 5, 2011, at approximately 7:58, the Red Lake Police Department received a phone call from Red Lake Indian Health Services Hospital advising that Christopher Erickson, the alleged victim in this case, was received into the ER because he "got whooped on about an hour ago." (Def.'s Ex. 1) (on file with the Court). Red Lake Police Officer Guadalupe' Ybarra

---

[1] The discovery motions were the subject of a separate order.

1

was dispatched to the hospital to speak with Erickson. (Def.'s Ex. 2). Upon arrival, Officer Ybarra observed that Erickson had obvious injuries to his face including "swelling to his right eye and nose." (Id.) Erickson stated that "he did not recall who assaulted him" but reported that "he was trying to back away from the guy and the guy came up to him and tripp[ed] him." (Id.) Erickson then "fell to the ground and he was kicked up in the face." (Id.) Erickson also advised Officer Ybarra that they had been drinking vodka. When Officer Ybarra asked Erickson if he wanted to sign a complaint, Erickson stated he "would sign [the complaint] later," and Officer Ybarra advised him to contact the police "when he was sober so he could sign a complaint." (Id.)

The following morning, on October 6, 2011, at approximately 11:05 a.m, Red Lake Police Officer Robert Lynch was dispatched to Shiela Stately's residence to speak with Erickson regarding the injuries Erickson suffered the previous night. (Def.'s Ex. 3). Erickson reported to Officer Lynch that the individual who assaulted him the previous night was Tom Sayers (Defendant). (Id.) Erickson stated that his cousin, Nola Parkhurst, and Defendant had come to Erickson's house for a few drinks. (Id.) Erickson explained that "suddenly [Defendant] just hit him in the right eye" and that although Erickson tried to get away, he fell to the ground, and Defendant kicked and stomped him, during which time Erickson "kept repeating 'Not in front of my son' over and over again." (Id.) Erickson reported that after Defendant stopped kicking him, Defendant left the house. (Id.) After taking Erickson's report, Officer Lynch provided a complaint form for Erickson which he signed. (Id.) Erickson reported that "he had a broken nose, possibly a torn ligament in his left knee, and possible broken bones in his right hand," and Officer Lynch observed "a highly swollen, very dark bruise on [Erickson's] right eye." (Id.)

2

Special Agent Joe Ogden of the Federal Bureau of Investigation was advised of the incident several days after the initial report of the assault. (Hearing Tr., Dec. 21, 2012 [Docket No. 49] at 37).[2] Special Agent Ogden then requested the reports from the Red Lake Police Department, requested the victim's medical records from Sanford Medical Center (Sanford), and also attempted to contact Nola Parkhurst. (Id.) The request to Sanford was initially unsuccessful, and Special Agent Ogden did not receive the medical records until several months later. (Id. at 38). His attempt to contact Nola Parkhurst was also unsuccessful. (Id. at 38-39). He received the reports from the Red Lake Police Department on November 30, 2011. (Id. at 46).

---

[2] At the hearing on Defendant's motion, the Government did not call Special Agent Ogden (who was unavailable) to testify but, rather, called his supervisor Special Agent Christopher Boeckers to testify regarding the FBI's involvement in the case. Defendant objected to the entire testimony of Special Agent Boeckers based on hearsay and lack of personal knowledge. The Court advised the parties that it would take the objection under advisement and directed the parties to address the issue of whether Special Agent Boeckers's testimony was admissible in their written submissions to be filed after the hearing. In his written submission, Defendant argued that "[a]lthough Federal Rules of Evidence 104(a) and 1101(d) state that the court is not bound by the rules of evidence in deciding preliminary matters, the court may still exclude testimony if it has reason to distrust the evidence being presented." (Mem. in Supp. of Def.'s Mot. to Dismiss Indictment [Docket No. 47] at 9) (citing United States v. Matlock, 415 U.S. 164, 174-76 (1974)). Defendant then asserted that the Court should distrust Special Agent Boeckers's testimony because he had, according to Defendant, "absolutely no personal knowledge on [the] issue" that the "delay was not for purposes of gaining a tactical advantage." (Id. at 10). Both parties correctly acknowledge that in conducting preliminary hearings, the Court is free to "receive the evidence and give it such weight as his judgment and experience counsel." Matlock, 415 U.S. at 175. This Court has previously held that "[t]he rules of evidence, except for rules about privilege, do not apply at suppression hearings." United States v. Pickar, No. 08-116 (PJS/SRN), 2008 WL 5412363, at *1 (D. Minn. Dec. 23, 2008); see also United States v. Smith, No. 12-183 (SRN/AJB), 2012 WL 5497872, at *2 (D. Minn. Sept. 20, 2012) ("hearsay may be accepted at a suppression hearing so long as the court is persuaded that the statements were actually made and there is no cause for serious doubt about truthfulness"), adopted by 2012 WL 5497862 (D. Minn. Nov. 13, 2012). The same standard applies in this motion, because like motions to suppress, a motion to dismiss the indictment is considered a pretrial motion. See United States v. Louper-Morris, 672 F.3d 539, 562 (8th Cir. 2012) (characterizing a motion to dismiss the indictment as a pretrial motion); United States v. Jeanetta, No. 09-3534 (DWF/SRN), 2010 WL 3546514, at *2 (D. Minn. Sept. 7, 2010) (explaining that the defendant "filed a pretrial motion to dismiss the indictment"); United States v. Crespo, No. 08-349 (ADM/JJK), 2010 WL 3928186, at *1 (D. Minn. Sept. 29, 2010) (same). Moreover, in this case, there is no reason to seriously doubt the truthfulness of Special Agent Boeckers's testimony. Special Agent Boeckers's specifically testified that he was the supervisor for Special Agent Joe Ogden, that he was familiar with this case, that he had conversations with Special Agent Ogden throughout the investigation, and that he would "review and approve documents that Special Agent Ogden [would] produce during the course of his investigation." (Hearing Tr., Dec. 21, 2012 at 35-36). Furthermore, Special Agent Boeckers's specifically limited himself to facts he personally knew and where he was unsure about a fact, he would specifically state that he did not know. (See, e.g., id. at 38 (stating that he was not specifically sure why Special Agent Ogden was unable to contact Nola Parkhurst); id. at 40 (stating that he would have to speculate on something because he did not personally know)).

On February 26, 2012, Nola Parkhurst unexpectedly died of causes unrelated to this case. (Id. at 25, 39).

On May 22, 2012, S.S., Erickson's minor daughter, underwent an interview and evaluation by the Family Advocacy Center for Northern Minnesota not directly related to the matter now before the Court. (Def.'s Ex. 4). The interview was observed by FBI Special Agent Joe Ogden, among others. (Id.) During the interview, S.S., who was eight-years-old at the time of the interview, provided some information relevant to the alleged assault, namely that she saw Defendant "beat [Erickson] up." (Id. at 3). Specifically, she reported that she "and her brother were outside playing, she went inside to the bathroom, and when she came back outside, [Defendant] was beating up [Erickson]." (Id.) S.S. stated that Defendant "threw [Erickson] on the ground, kicked him in the eye and the knee, was biting him on his arm, and punching him." (Id.) According to S.S., "[Defendant] was drinking beer and was trying to make [Erickson] drink." (Id.) After the interview, but on the same day, Special Agent Ogden opened an FBI investigation. (Hearing Tr., Dec. 21, 2012 at 41).

On July 3, 2012, Special Agent Ogden obtained a signed authorization from Erickson to obtain Erickson's medical records from Sanford. (Def.'s Ex. 5); (Hearing Tr., Dec. 21, 2012 at 42). He received copies of the medical records on August 29, 2012. (Hearing Tr., Dec. 21, 2012 at 42). On August 30, 2012, Special Agent Ogden presented the case to the United States Attorney's Office. (Id. at 43). The case was then presented to a grand jury on October 1, 2012. (Id.)

## II.   DISCUSSION

Defendant argues that the Indictment in this case should be dismissed because the delay in bringing the matter before the grand jury resulted in the unavailability of a witness he asserts

4

was key for his defense, and which he argues violated his due process rights. (Mem. in Supp. of Def.'s Mot. to Dismiss Indictment [Docket No. 47] at 1). The Government argues that Defendant has failed to meet his burden for demonstrating a violation of his due process rights. (Mem. in Supp. of Gov't's Response [Docket No. 50] at 3).

"The Fifth Amendment's Due Process Clause protects a criminal defendant against unreasonable pre-indictment delay." United States v. Gladney, 474 F.3d 1027, 1030 (8th Cir. 2007). "To prove a violation of his due process rights, [the defendant] must establish the delay resulted in actual and substantial prejudice to the presentation of the defense and the government intentionally delayed [the defendant's] indictment either to gain a tactical advantage or to harass him." Id. "The court will inquire into the reasons for delay *only* where actual prejudice has been established." Id. at 1030-31 (emphasis in original). "[A] defendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause." United States v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006).

**A. Defendant has shown that the pre-indictment delay in this case has caused him actual and substantial prejudice**

"To establish actual prejudice, a defendant must identify witnesses or documents lost during the delay period." Gladney, 474 F.3d at 1031. "[A]ctual prejudice cannot be established by defendant's speculative or conclusory claims of possible prejudice as a result of the passage of time." Id. Rather, a defendant "must relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense." United States v. Bartlett, 794 F.2d 1285, 1290 (8th Cir. 1986). Furthermore, "[t]he

5

defendant carries the burden to show the lost testimony or information is not available through other means [or other sources]." Gladney, 474 F.3d at 1031-32.

Defendant argues that he has suffered actual and substantial prejudice because "[h]is defense is that he was attacked by Erickson and acted in self-defense," and now the witness he planned to call to support his self-defense theory (Nola Parkhurst) is unavailable because she died prior to the filing of the Indictment. (Mem. in Supp. of Def.'s Mot. to Dismiss Indictment [Docket No. 47] at 6).

At the hearing, Defendant called Emily Parkhurst, Nola Parkhurst's mother. Emily Parkhurst testified that Nola Parkhurst had spoken to her about the incident involving Erickson and Defendant. (Hearing Tr., Dec. 21, 2012 at 26). Emily Parkhurst reported that she had been advised by Nola Parkhurst that on the night of the incident "[Erickson] started acting tough and wanted to fight [Defendant]"; Erickson would "egg [Defendant] on." (Id.) Emily Parkhurst further stated, as explained to her by Nola Parkhurst, that "[Erickson] was trying to hit [Defendant]" and that on two or three occasions Nola Parkhurst tried to stop Erickson. (Id. at 26-27). After these several attempts to calm the situation, "[Erickson] went after [Defendant] again" and they began fighting. (Id. at 27). It was reported to Emily Parkhurst, by Nola Parkhurst, that Erickson started the fight and Tom was just trying to defend himself. (Id.)

Based on the testimony of Emily Parkhurst, Defendant has identified the witness who is no longer available and has introduced evidence to substantiate the testimony that would have been offered by the missing witness if she were available to testify.[3] Based on the evidence of

---

[3] The Court notes that there is some basis to doubt the veracity of Nola Parkhurst's statements to her mother. Although, Emily Parkhurst stated that she had an "open and honest" relationship with her daughter, Nola, and that she believed her daughter told her the truth because "[Nola] just never lied to [her]," Emily Parkhurst also testified that she had not been given the complete story; namely, Nola had not told her whether either party had suffered any injuries. (Hearing Tr., Dec. 21, 2012 at 25, 27-30). Emily Parkhurst also testified that Defendant may have been physically abusive toward Nola at times. (Id. at 30-32). Nevertheless, for purposes of this motion, the Court finds no reason to discount Emily Parkhurst's testimony as to the extent of what Nola Parkhurst had advised her about the

6

the expected testimony, there is undoubtedly some prejudice to Defendant, however, the question before the Court is whether this prejudice is actual and substantial.  Admittedly, it is a close question; however, on the specific facts of this case, the Court finds actual and substantial prejudice.

As noted earlier, "[t]he defendant carries the burden to show the lost testimony or information is not available through other means [or other sources]."  Gladney, 474 F.3d at 1031-32.  Here, there is no dispute that the testimony **corroborating** Defendant's self-defense theory is not available through any other means.  The Government appears to argue, however, that because Defendant himself can testify to the information supporting his self-defense theory, there is no substantial prejudice.  (Mem. in Supp. of Gov't's Response [Docket No. 50] at 5) ("There is nothing in the defendant's proffered testimony to which the defendant could not testify himself.").  This position is problematic for several reasons.  First, even assuming that the Defendant should be considered an alternate source for the information that would have been introduced through the missing witness, doing so necessarily removes the element of "corroboration" without anyone else to support his theory.  Second, for the Defendant to be considered as an alternate source, it necessarily presumes that the Defendant is willing to waive his right to not take the stand.  In other words, in order to find that the Defendant's Fifth Amendment rights to due process were not violated, under the Government's theory, they would expect or require that Defendant to waive his Fifth Amendment right to remain silent.  Absent some authority directly on point addressing the issue, the Court is not convinced that Defendant is required to make this "Hobson's choice" in order to show actual and substantial prejudice.

---

incident at issue, and as such, finds that Defendant has substantiated the testimony that Nola Parkhurst would have provided at trial were she available.

7

In support of its position, the Government cites only to Bartlett, 794 F.2d at 1291. In Bartlett, however, the Eighth Circuit did not hold that there is no substantial prejudice where Defendant's ability to testify to the information is alone sufficient to find an absence of substantial prejudice. Rather, the Court stated that the "defendant offer[d] no indication of what that information might be, or why that information would not be available from the victim on cross-examination or from the defendant himself, if he chose to testify." Bartlett, 794 F.2d at 1291 (internal footnote omitted). As already noted above, in seeking to dismiss an indictment due to delay and the resulting loss of evidence, a defendant cannot merely provide speculation as to what information may have been provided by a missing witness, and it appears that the absence of any proffer as to the specificity of the so-called missing testimony in Bartlett impacted the Court's decision. Moreover, in Bartlett, there also appeared to be the opportunity that the testimony could still have been elicited from a witness other than the defendant. Here, however, Defendant is not merely speculating as to what testimony is missing. Further, the missing testimony appears to have been a possible independent source of evidence by which defendant could have sought to directly contradict the reports of the victim as to what occurred. As such, the circumstances of this case are different from Bartlett. Here, it appears that the only person who remains able to testify as to the information that Nola Parkhurst, the absent witness, might have provided is Defendant.[4] Although there is some authority to suggest that where a defendant is able to take the stand and testify as to the missing information there will not necessarily be substantial prejudice, see Bartlett, 794 F.2d at 1291; United States v. Edwards,

---

[4] The Court notes that Defendant has not necessarily demonstrated that Emily Parkhurst will not be able to testify at trial regarding the information provided to her by Nola Parkhurst. While the testimony would undoubtedly be based on hearsay, Defendant may nevertheless attempt to introduce it through one of the numerous hearsay exceptions. At this point, however, the issue is not before the Court and neither party has addressed it. As such, the Court declines to speculate on whether it will be offered, and ultimately admitted, at trial.

577 F.2d 883, 891 (5th Cir. 1978), the Court here need not draw a bright-line rule in what is necessarily a circumstance-dependent inquiry.

The Eighth Circuit has previously explained that "in this circuit . . . an assessment of the nature and degree of the prejudice resulting from the missing evidence must be made in light of the overall strength of the government's case." United States v. Benshop, 138 F.3d 1229, 1234 (8th Cir. 1998). Even without an exhaustive analysis of the strength of the government's case, it is apparent that, on the facts of this specific case, the testimony of the missing witness would have played a crucial role in the defense's efforts at refuting the Government's case against the Defendant. As in many assault cases, much of the consideration will rely on circumstantial evidence and the testimony of the witnesses to the assault. Here, it appears that there were only three first-hand witnesses who observed the inception of the incident: the victim; the Defendant; and Nola Parkhurst, who is now unavailable. Although there is also a fourth witness, the victim's daughter, in addition to her young age, the record before the Court at this time demonstrates that she witnessed only a latter part of the incident and did not witness the beginning of the incident. (Def.'s Ex. 4 at 3) (reporting that she "and her brother were outside playing, she went inside to the bathroom, and when she came back outside, [Defendant] was beating up [Erickson]").[5] As such, the only witness other than the victim and Defendant, who would have provided testimony corroborating Defendant's self-defense theory, is now unavailable. This is not a circumstance where the government's case is "extremely strong" because it is supported by the defendant's confession of the crime after being properly advised of his Miranda rights. See Bartlett, 794 F.2d at 1292. On the specific facts of the case now before

---

[5] There is also a suggestion in one of the police reports that Erickson's son may have observed some of the incident, but in the record before the Court, there is nothing further to show whether Erickson's son did, in fact, observe any of the alleged assault. (See Def.'s Ex. 3).

the Court, Defendant has shown that "the prejudice *actually* impaired his ability to meaningfully present a defense." Bartlett, 794 F.2d at 1290 (emphasis in original).[6]

The foregoing conclusion, however, does not end the inquiry. The Court must also consider the second element of the analysis: whether "the government intentionally delayed [Defendant's] indictment either to gain a tactical advantage or to harass him." Gladney, 474 F.3d at 1030.

### B. There is no evidence to show that the Government delayed the indictment to gain a tactical advantage

Defendant argues that "[t]he government failed to show that the delay was due to any legitimate investigative purpose." (See Mem. in Supp. of Def.'s Mot. to Dismiss Indictment [Docket No. 47] at 1). Defendant appears to argue that the Government carries the burden of showing that the delay was because of investigative purposes. (See id. at 9) ("the government failed to carry its burden that its delay was not to gain a tactical advantage over Sayers . . . ."). As explained by the Eighth Circuit in Gladney, however, it is Defendant's burden to demonstrate both elements under the analysis. 474 F.3d at 1030 ("To prove a violation of his due process rights, Gladney must establish . . . the government intentionally delayed Gladney's indictment either to gain a tactical advantage or to harass him."); see also Jackson, 446 F.3d at 849

---

[6] The only other argument the Government offered for why no substantial prejudice exists in this case is that there is an insufficient showing that Nola Parkhurst would have testified as to the information provided by Emily Parkhurst. (Mem. in Supp. of Gov't's Response at 3-4). As already noted above, however, Defendant here has not merely speculated as to what the missing witness would have testified to, and although there was some reason to doubt that Nola Parkhurst had given a complete picture of the incident to Emily Parkhurst at the time she talked to Emily Parkhurst, for purposes of this motion, there was no real reason to doubt that Nola Parkhurst would have testified that Defendant was acting in self-defense. Furthermore, the short and somewhat unclear testimony from Emily Parkhurst that Nola Parkhurst and Defendant would physically fight at times does not demonstrate that Nola Parkhurst would not have testified that Defendant was acting in self-defense. The Government's reliance on United States v. Benshop, 138 F.3d 1229, 1235 (8th Cir. 1998) for this proposition is misplaced. In Benshop, the Court explained that because the missing witness had previously made a written statement that was clearly contrary to the testimony defendant argued the witness would have offered at trial, it was "reasonable to conclude that [the witness] would not have testified as defendant allege[d]." Benshop, 138 F.3d at 1235. Here, there is no evidence that Nola Parkhurst at any time made statements that would be inconsistent with the testimony Defendant alleges she would have offered at trial.

10

("[D]efendants claiming a due process violation for pre-indictment delay must carry the burden of proof on two separate elements."); United States v. Cole, 2012 WL 4855561, at *2 (E.D. Mo. Sept. 24, 2012) ("Nor has the defendant shown that the government intentionally delayed his being charged in the indictment in order to gain a tactical advantage or to harass him."); United States v. Ramirez, 2010 WL 3666716, at* (S.D. Fl. Sept. 15, 2010) ("The Defendant has the burden to establish both prongs of the test for a dismissal of the indictment for pre-indictment delay.").

Here, there has been no showing made that the Government delayed in bringing the indictment to gain a tactical advantage or harass the Defendant. To the contrary, Special Agent Boeckers testified that he was unaware of any attempts to gain a tactical advantage and that he couldn't imagine there would be because "in [his] experience, a time lapse is often to a Defendant's advantage." (Hearing Tr., Dec. 21, 2012 at 49). It is undisputed that Special Agent Ogden was advised of the assault only several days after the assault, and having received the Red Lake Police Department reports by November 30, 2011, Special Agent Ogden continued to investigate the specifics of the crime; specifically, he was continuing to attempt to speak to Nola Parkhurst and to obtain the victim's medical records.[7]

While Defendant argues that the medical records were not absolutely necessary before Defendant could be charged with "serious bodily injury," the inquiry before the Court is not what

---

[7] The Court notes that while the case was not brought before a grand jury until October 1, 2012, the only prejudice Defendant has alleged is that resulting from the death of Nola Parkhurst on February 26, 2012. Because Defendant does not allege any prejudice from the delay after February 26, 2012, the Court's analysis is focused on the timeframe from the incident in October 2011 to Nola Parkhurst's death in February 2012. The United States Supreme Court has explained that "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee, against bringing overly stale criminal charges." United States v. Lovasco, 431 U.S. 783, 789 (1977) (internal quotation marks omitted). As such, the mere delay of less than 12 months, in and of itself, would not be a sufficient basis to dismiss an indictment. See Gladney, 474 F.3d at 1028 (finding that a nineteen-month delay in bringing a federal indictment against the defendant did not violate his due process rights); United States v. Rudolph, 970 F.2d 467, 469 (8th Cir. 1992) (same); United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995) ("fifty-five month delay between the time that the [defendants] committed the actions for which they were convicted and their indictment" not grounds to dismiss indictment where defendants failed to demonstrate substantial prejudice).

11

was the earliest point at which the Defendant could be charged, but rather, whether the Government intentionally delayed in bringing the indictment to gain a tactical advantage. In the seminal case to address the issue of when a defendant's due process rights are violated because of pre-indictment delay, the United States Supreme Court explained that it was "obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." United States v. Lovasco, 431 U.S. 783, 791 (1977). Similarly, "[f]rom the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited." Id. at 791-92. The Supreme Court reasoned that "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' precisely because investigative delay is not so one-sided." Id. at 795.

Here, the evidence before the Court demonstrates that during the months between October 2011 and February 2012, Special Agent Ogden of the FBI was taking steps to investigate the matter. It is not the Court's role to second-guess the details and dates of when the police took certain investigative steps. The relevant inquiry is whether the delay was done with an intent to gain a tactical advantage or harass the Defendant: there is no evidence in the record before the Court of either purpose. There is no evidence to indicate that the Government specifically waited until Nola Parkhurst died before opening an official investigation file to gain a tactical advantage; in fact, there is no evidence to even suggest that the Government was aware that Nola Parkhurst might die in the reasonably foreseeable future after the alleged October, 2011 assault. Although the Court does not have before it the specific cause of Nola Parkhurst's

12

death, the fact that she was 42 years old, in the absence of any other evidence, her age alone does not suggest that the Government may have even been aware of the possibility that she could die in the reasonably foreseeable future after the alleged assault. Moreover, Special Agent Ogden had attempted to contact Nola Parkhurst to speak with her shortly after the incident about the alleged assault but was unsuccessful in his efforts.

Defendant argues that Special Agent Boeckers's "testimony provides a strong clue that the delay was tactical" because the FBI "must have decided it had no case." (Mem. in Supp. of Def.'s Mot. to Dismiss Indictment at 10). But even if the FBI delayed in bringing the matter to the United States Attorney's Office because it did not believe that it yet had enough evidence to support a charge against Defendant, it does not demonstrate an improper tactical advantage. As explained by the Court in Lovasco, the police and the Government are in the unique position to determine when they have sufficient evidence with which to bring a case against an individual, and thus, a delay in bringing charges while it continued its investigation to collect evidence is hardly the improper tactical advantage that requires dismissal of an indictment. In the absence of any evidence to show that the delay was because of an intent to harass or gain a tactical advantage (other than to collect further evidence), there has not been a showing of improper delay.

For the reasons stated above, the Court finds that there is no evidence which demonstrates that the Government delayed in bringing the case to the grand jury, or that Special Agent Ogden delayed in bringing the case to the United States Attorney's Office, to gain a tactical advantage or harass the Defendant.

### III. CONCLUSION

1. Based on the foregoing, and all the files, records and proceedings herein,

    **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss the indictment [Docket No. 31] be denied.


Dated: January 18, 2013
s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 1, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.